NO. 24-40692

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### UNITED STATES OF AMERICA,
**Plaintiff-Appellee,**

## VS.

### CARLOS CARDENAS-RAMIREZ
**Defendant-Appellant.**
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS, McALLEN DIVISION,
**District Court Cause No. 7:20-CR-886-2**

_____

## APPELLANT'S BRIEF
_____

**Victoria Guerra**
**State Bar Number: 08578900**
**3219 N. McColl Rd.**
**McAllen, TX 78501**
**(956) 618-2609**
**(956) 618-2553 (facsimile)**
**Counsel for Appellant**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
### <u>United States of America v. Carlos Cardenas-Ramirez</u>
### Cause No. 24-40692

Pursuant to Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualfication or recusal.

1. Hon. Ricardo Hinojosa, Trial Judge; Hon. Randy Crane, Sentencing Judge.

2. Carlos Cardenas-Ramirez (herein after "Cardenas"), Defendant-Appellant.[1]

3. United States of America, Plaintiff- Appellee

4. Trial Counsel for USA: Patricia Cook Profit as lead counsel and Benjamin Lyles, assisting; U.S. Attorney's Office, 1701 W. Hwy. 83, McAllen, TX 78501. Phone: (956) 618-8010; Fax: (956) 618-8009 (fax); pat.profit@usdoj.gov (email)

5. Appellate Counsel for USA: Carmen Castillo Mitchell, U.S. Attorney's Office, 1000 Louisiana, Suite 2300, Houston, TX 77002; Phone: 713-567-9000; Email: carmen.mitchell@usdoj.gov

6. Trial Counsel for Cardenas was Arturo Reymundo Cantu; 10113 North 10th Street, Suite H; McAllen, TX 78504; phone number 956-668-1346; Email: ArturoR@cantulawfirm.net

7. Appellate Counsel for Cardenas: Victoria Guerra; 3219 N. McColl Rd., McAllen, TX 78501; Phone: (956) 618-2609; Fax: (956) 618-2553; Email: vguerralaw@gmail.com

> */s/ Victoria Guerra*
> Victoria Guerra
> Appellate attorney for Cardenas

---

[1] Cardenas also utilized the name, Sergio Anaya. ROA.24-40692.364.

## **REQUEST FOR ORAL ARGUMENT**

Cardenas requests oral argument because it would benefit this Court in rendering its decision.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…..…………..…….…..………….1

REQUEST FOR ORAL ARGUMENT………………………..…..………….2

TABLE OF CONTENTS…………………………………..…..….……………3

TABLE OF CITATIONS…………………………………..…….…..…………4

STATEMENT OF JURISDICTION…………………..……..…..…..………..8

STATEMENT OF THE ISSUE………………………..…..…..…..…..……....9

STATEMENT OF THE CASE…………………………..…..…..……..…….10

SUMMARY OF THE ARGUMENT……………………..…..…..…………...28

ARGUMENT………………………………………………..…………….....29

ISSUE 1: Sufficiency of the Evidence-Conspiracy ...................................................29

ISSUE 2: Error in Overruling Motion for Acquittal-Conspiracy ...........................29

ISSUE 3: Sufficiency of the Evidence-Scope of the Conspiracy ...........................41

ISSUE 4: Error in Overruling Motion for Acquittal-Scope of Conspiracy……….41

ISSUE 5: Violation of Due Process-at Sentencing……………………………..….46

CONCLUSION………………………………………….…………..…….49

CERTIFICATE OF SERVICE…………..……………………..…………..…….50

CERTIFICATE OF COMPLIANCE……………………..…………..…….51

# **TABLE OF CITATIONS**

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)...........................................26, 47, 49

*Garland v. Maggio*, 717 F.2d 199 (5th Cir. 1983). ...............................................49

*In Re Winship*, 397 U.S. 358 (1970). ..............................................................49, 51

*United States v. Martinez-Moncivais*, 14 F.3d 1030 (1994)..................................42

*United States v. Affleck*, 861 F.2d 97 (5th Cir. 1988),.....................................49-50

*United States v. Aguirre-Rivera*, 8 F.4th 405 (5th Cir. 2021) .........................47, 48

*United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994).............................32-33, 41

*United States v. Bright*, 550 F.2d 240 (5th Cir. 1977);..........................................30

*United States v. Cardenas*, 9 F.3d 1139 (5th Cir. 1993) .................................33, 41

*United States v. Cordova-Larios*, 907 F.2d 40 (5th Cir. 1990) .............................33

*United States v. Daniels*, 723 F.3d 562 (2013).................................................47-48

*United States v. Delgado*, 672 F.3d 320 (5th Cir. 2012). ......................................32

*United States v. Denson*, 588 F.2d 1112 (5th Cir. 1979).......................................50

*United States v. Diaz-Carreon*, 915 F.2d 951 (5th Cir. 1990). ............................35

*United States v. Ferg*, 504 F.2d 914 (5th Cir. 1974) .............................................33

*United States v. Ferguson*, 211 F.3d 878 (5th Cir. 2000).......................................45

*United States v. Fuchs*, 467 F.3d 889 (5th Cir. 2006). .....................................32, 44

*United States v. Galvan*, 693 F.2d 417 (5th Cir. 1982) ..........................................33

*United States v. Garcia*, 86 F.3d 394 (5th Cir. 1994)..............................................34

*United States v. Garza*, 990 F.2d 171 (5th Cir. 1993).............................................35

*United States v. Gonzalez*, 907 F.3d 869 (5th Cir. 2018). ................................ 45, 47

*United States v. Gonzalez-Lira*, 936 F.2d 184 (5th Cir. 1991)........................ 34, 41

*United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006)............................................32

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015)............................................45

*United States v. Jackson*, 700 F.2d 181 (5th Cir.1983) ..................................... 33, 41

*United States v. Johnson*, 439 F.2d 885 (5thCir.)............................................. 33, 41

*United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005) ...............................44

*United States v. Malatesta*, 590 F.2d 1379 (5th Cir. 1979) .............................. 32, 40

*United States v. Martinez-Lugo*, 411 F.3d 597 (5th Cir. 2005) ..............................34

*United States v. Mendoza*, 522 F.3d 482 (5th Cir. 2008) ........................................33

*United States v. Mergerson*, 4 F.3d 337(5th Cir. 1993) ............................. 32, 42, 43

*United States v. Miller*, 146 F.3d 274 (5th Cir. 1998)............................................35

*United States v. Moreno-Gonzalez*, 662 F.3d 369 (5th Cir. 2011) .................... 45-46

*United States v. Olguin*, 643 F.3d 384 (5th Cir. 2011) ...........................................45

*United States v. Pennington*, 20 F.3d 593 (5th Cir. 1994).......................................34

*United States v. Pineda-Arrellano*, 492 F.3d 624 (5th Cir. 2007).................... 49-51

*United States v. Pineda-Ortuno*, 952 F.2d 98 (Fifth Cr. 1992) ..............................35

*United States v. Richardson*, 848 F.2d 509 (5th Cir. 1988).....................................34

*United States v. Robertson*, 110 F.3d 1113 (5th Cir. 1997) ....................................33

*United States v. Rojas Alvarez*, 451 F.3d 320 (5th Cir. 2006).......................... 34, 41

*United States v. Ross*, 58 F.3d 154 (5th Cir. 1995). ......................................... 33, 41

*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003). .................................... 32, 40

*United States v. Vara*, 476 Fed. Appx. 554 (5th Cir. 2012) ...................... 34, 35, 39

*United States v. Walker*, 750 F. App'x 324 (5th Cir. 2018)....................................42

*United. States v. Garcia-Flores*, 246 F.3d 451 (5th Cir. 2001).............................41

**Statutes**

**18 U.S.C.**

§ 3742 (a)(1)...............................................................................................................9

§ 3553(a) ...................................................................................................................29

§ 3231 .........................................................................................................................9

**21 U.S.C.**

§ 841(b)(1)(A)..................................................................................................... 11, 12

§ 846................................................................................................................... 11, 12

**28 U.S.C.**

§ 1291 .........................................................................................................................9

**Sentencing Guidelines**

§ 1B1.3 ......................................................................................................................50

**Rules**

5TH CIR. R. 25.2.1 ............................................................................. 53-54

5TH CIR. R. 31.1. ..................................................................................53

5TH CIR. R. 25.2.13 ...............................................................................54

Fed. R.App. P. 32(a)(6) ..........................................................................54

Fed. R. App. P. 32(a)(7)(B)(iii). ............................................................54

Fed. R. App. P. 28.2.1 .............................................................................2

**Constitutional Provisions**

14th Amend., U.S. Const ................................................................. passim

# STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231.

This appeals court has jurisdiction under 28 U.S.C. § 1291. This is an appeal from a final judgment of a conviction and sentence entered by the United States District Court for the Southern District of Texas. Jurisdiction also lies under 18 U.S.C. § 3742 (a)(1), which provides for review of sentences imposed in violation of the law.

Cardenas was orally sentenced on October 23, 2024. (ROA.24-40692.136-141). The judgment appealed from was entered on October 29, 2024. (ROA.24-40692.136). Mr. Cardenas timely filed his Notice of Appeal on October 23, 2024. (ROA. 24-40692.121). *See* FED. R. APP. P. 4(b)(2).

## <u>STATEMENT OF THE ISSUES</u>

<u>ISSUE 1</u>: **THE EVIDENCED ADDUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT CARDENAS' CONVICTION ON COUNT ONE, CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE IN AN AMOUNT OF FIVE (5) KILOGRAMS OR MORE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE.**

<u>ISSUE 2</u>: **THE TRIAL COURT ERRED IN OVERRULING CARDENAS' MOTION FOR ACQUITTAL GIVEN THAT THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO PROVE CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE IN AN AMOUNT OF FIVE (5) KILOGRAMS OR MORE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE.**

<u>ISSUE 3</u>: **THE EVIDENCED ADDUCED AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT CARDENAS KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE SCOPE OF THE CONSPIRACY INVOLVED AT LEAST 5 KILOGRAMS OF COCAINE.**

<u>ISSUE 4</u>: **THE TRIAL COURT ERRED IN OVERRULING CARDENAS' MOTION FOR ACQUITTAL AS TO THE FOURTH AND FIFTH ELEMENTS OF CONSPIRACY THAT THE JURY CHARGE SET FORTH IN THE JURY CHARGE WHEN THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT CARDENAS KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE SCOPE OF THE CONSPIRACY INVOLVED AT LEAST 5 KILOGRAMS OF COCAINE**

<u>ISSUE 5</u>: **AT SENTENCING, THE DISTRICT COURT VIOLATED CARDENAS' DUE PROCESS RIGHTS, 14TH AMEND., U.S. CONST. WHEN IT CONSIDERED COUNT TWO'S ACQUITTED CONDUCT**

## STATEMENT OF THE CASE

**A.  Proceedings Below:**

**1. The Superseding Indictment dated April 19, 2022:** ROA.24-40692.49-50.

Count One—Conspiracy to possess with intent to distribute a controlled substance, namely cocaine in the amount of 5 kilograms or more, a schedule II substance in violation of Title 21, U.S.C., Secs. 846, 841(a)(1), and 841(b)(1)(A). ROA.24-40692.49-50.

**2. Jury Trial.** The jury found Cardenas guilty of count one, conspiracy to possess with intent to distribute a controlled substance, namely cocaine in the amount of 5 kilograms or more, a schedule II substance, (ROA.24-40692.702), and acquitted him on Count Two—possession with intent to distribute. ROA.24-40692.702.[2]

**3. Statement of the Facts**

**a. The Offense**

The offense at issue is based on count one's conspiracy to possess with intent to distribute a controlled substance—cocaine in the amount of 5 kilograms or more,

---

[2] It should also be noted that co-defendant Pedro Alvarez, Jr. was acquitted of both counts. ROA. 24-40692.701-02.

a schedule II substance in violation of Title 21, U.S.C., Secs. 846, 841(a)(1), and 841(b)(1)(A). ROA.24-40692.49-50.

### b. The Trial ROA.24-40692.169-714

Our Government presented various witnesses who set forth the pattern of facts that allegedly occurred on the day of interest—April 23, 2019.

This case arose from a long-term investigation. ROA.24-40692.489. The purpose of the investigation was to identify suspects that were brining narcotics into the United States and identify other cells that were distributing it among each other and delivering the narcotics to different cities within the United States. ROA.24-40692.489. Cesar Herrera was one of the cell leaders who utilized speaker boxes to transport narcotics and who was in custody at the time of this trial. ROA.24-40692.490.

DEA task force officer Raul Campos, Jr. was involved in surveillance on April 23, 2019. ROA.24-40692.211. His task was to follow Cesar Herrera, who DEA had identified as a drug courier. ROA.24-40692.211.[3] Det. Campos began to conducted surveillance at Herrera's residence in Alamo, Texas. Driving a red Jetta, (ROA.24-40692.211), Herrera went to Dollar General #1 in Donna, (ROA.24-40692.211) with

---

[3] A ping order was obtained on Herrera because the agents noticed a pattern with him when he would travel to a certain portion of Pharr where he was suspected of picking up some speaker boxes loaded with narcotics. ROA.24-40692.227-28.

Det. Cerda following him. ROA.24-40692.213. Herrera turned into the parking lot of Dollar General #1 and Det. Cerda continued north, parking in a surrounding area near the red Jetta, waiting for it to leave. ROA.24-40692.214. When Herrera arrived to Dollar General #1, a white Sentra arrived, and the two cars parked next to eachother. ROA.24-40692.367. The drvier of the white Sentra was later identified as Cardenas. ROA.24-40692.368. Cardenas was at Dollar General #1 for about 5-8 minutes. ROA.24-40692.251. He left Dollar General #1 at 4:12 p.m. Even though the two Dollar Generals are about 2.5 miles apart, it took Cardenas about 10 minutes to arrive to Dollar General #2 because of traffic. ROA.24-40692.251. Cardenas left Dollar General #2 at 5:10. ROA.24-40692.254.

While at Dollar General #1, Agents observed an exchange of some items between the Jetta and a white Sentra at Dollar General #1.  ROA.24-40692.214, 230. Herrera got off his vehicle at the same time that Cardenas got out of the white Sentra. ROA.24-40692.368. Herrera opened up his back door of the Jetta on the driver's side and then opened up the back door to the white Sentra on the pasenger side. ROA.24-40692.368. Cardenas walked around his vehicle towards the trunk rear area. ROA.24-40692.368. Herrera reached into his back seat and bent over to grab an item and placed it into the back seat of the Sentra. ROA.24-40692.368. He did this twice.  ROA.24-40692.368. Herrera's body motion was as though he was

picking up something with weight to it. ROA.24-40692.369. Agent Brazelton reported that Herrera was on the phone at 4:03. ROA.24-40692.257.

The red Jetta left Dollar General #1 and proceeded south and the white Sentra proceeded north on FM 493. ROA.24-40692.370. Agents stopped surveillance on the red Jetta and established surveillance on the white Sentra. ROA.24-40692.214. The agents' suspicion that a drug transfer had just occurred at Dollar Tree #1, they then followed the white Sentra to Dollar General #2, about 2.5 miles north of Dollar General #1. ROA.24-40692.231. Cardenas drove the white Sentra drove to Dollar General #2 and parked on the north side of the store. ROA.24-40692.370-71. At Dollar General #2, agents witnessed a third vehicle show up—a Volkwagon Atlas. ROA.24-40692.215. The Volkswagon SUV was driven by Geronimo Gonzalez. ROA.24-40692.398. Cardenas opened the back door of the driver's side of the white Sentra and looked like he was messing with something, then he closed the door on that side. ROA.24-40692.370. He then went to the passenger rear door and did the same thing—he reached in, bent over and looked like he was adjusting something in the back door of that side. ROA.24-40692.370-71.[4] Then Cardenas walked into

---

[4] The trial testimony by Agent Martinez was that Cardenas was messing with something in the back seat at Dollar General #2. ROA.24-40692.370. In his interrogation played to the jury in redacted form, (ROA.24-40692.849-903), he stated that he moved the speaker boxes from Dollar General #1. Whether Cardenas moved the boxes at Dollar General #1 or Dollar General #2 does not alter any argument set forth in issue no. 1. ROA.24-40692.876-77, 879, 883, 896-900. Even though he drove to Dollar General #2 after pulling the sealed and non-transparent boxes in the back seat, he still did not know, nor was it reasonably foreseeable for him to know that the speaker

the Dollar General #2 store, (ROA.24-40692.371) along with Geronimo Gonzalez, walked back out, then they switched cars. ROA.24-40692.398.

Det. Campos went into the store at Dollar General #2 and saw Cardenas inside the store. ROA.24-40692.214. Det. Campos wanted to see if Cardenas was going to meet with someone else to talk about a drug exchange. ROA.24-40692.232. Det. Campos left to another business in the surrounding area. ROA.24-40692.214.

Cardenas switched to the Volkswagon SUV and the driver of the Volkswagon SUV, Geronimo Gonzalez, drove the white Sentra. ROA.24-40692.215. In other words, Geronimo Gonzalez who arrived in the Volkswagon Atlas, got into the white Nissan Sentra. And Cardenas left in the Volkswagon Atlas. ROA.24-40692.492. The white Sentra left and traveled south towards co-defendant Pedro Alvarez's residence. ("Alvarez"). ROA.24-40692.215. Constable Joaquin Vasquez was requested to assist in a DEA investigation. ROA.24-40692.571. He was given instructions to conduct a probable cause stop on Cardenas. ROA.24-40692.572-73. Cardenas provided Vasquez with a driver's license which stated the name, "Sergio Anaya." ROA.24-40692.494. Vasquez issued a written warning to Cardenas for disregarding a stop. ROA.24-40692.572.

---

boxes contained cocaine and that the quantity was 5 kilograms or more as alleged in the indictment. ROA.24-40692.49-50. This is more fully discussed in Issue 3 and 4 below.

At Alvarez's residence, the gardener named Mauro Ortiz, who was wearing a blue T-shirt walked towards the front gate to open it. ROA.24-40692.215, 222. Alvarez moved a black Nissan passenger car—Maxima or Altima—from the garage area to another portion of the driveway. ROA.24-40692.222, 224. The white Sentra, previously observed at the Dollar General #2, then backed into the garage. ROA.24-40692.215, 222. The white Sentra, previously seen at Dollar General #1 and #2, (ROA.24-40692.223) was in the garage for about one and a half minutes and then left the residence. ROA.24-40692.223.

The white Sentra left after about 5 minutes. ROA.24-40692.216. It was stopped by DPS and the driver was identified as Geronimo Gonzalez. ROA.24-40692.216. The task force agents learned of and seized a surveillance DVR. ROA.24-40692.217.

Alvarez's residence belonged to his mother, Ms. Norma Barrera. ROA.24-40692.372, 496. The agents asked for consent to search her property for the suspicion of narcotics, which she gave. ROA.24-40692.217, 372. Agent Martinez's task was to conduct perimeter security while his partners obtained consent. ROA.24-40692.372. The garage was opened a bit later. ROA.24-40692.372. Pharr Police Department officer and K-9 handler Joshua Ybarra and his K-9 partner, Logan, entered the garage while Agent Martinez stayed at the entrance. ROA.24-40692.373-74. K-9 Logan went towards the two speaker boxes that were in the middle of the

16

garage and sat down. ROA.24-40692.374. A trained K-9 will sit when it detects the presence of narcotics. ROA.24-40692.375. Once Logan alerted to the speaker boxes, they were placed just outside the garage for security reasons.  ROA.24-40692.388-89. Extra speakers, tweeters, and wiring were stacked on top of a box in the garage, which looked similar to the loaded speaker boxes. ROA.24-40692.380.

The speaker boxes at issue were taken to the McAllen District Office where they were taken for processing. ROA.24-40692.390. Agent Martinez noticed that the speaker boxes were heavier than usual. ROA.24-40692.378, 389. Tools were used to open the speaker boxes. ROA.24-40692.378. inside were found four bundles of narcotics and the boxes contained spray insulated foam. ROA.24-40692.378. Before the speaker boxes were opened, the agents could not see inside of them. ROA.24-40692.383. The reason that the speaker boxes were opened was because Logan alerted to the presence of narcotics inside of them. ROA.24-40692.383. The drug lab determined that the cocaine net weight was 14.07 kilograms. ROA.24-40692.465.

Det. Campos lifted the speaker boxes as part of his job and there was a 15-20 pound difference in heaviness. ROA.24-40692.226, 248-49.

A seizure occurred on Geronimo's phone. ROA.24-40692.398. Agent Martinez conducted an extraction of Geronimo's phone in his presence. ROA.24-40692.399.

Cardenas consented to have his phone searched on 7-14-22. ROA.24-40692.267-68. Det. Campos went to Cardenas' apartment to speak to his wife. ROA.24-40692.278. No drugs were found in Cardenas' apartment. ROA.24-40692.282. Alvarez was arrested on 3-1-2020. ROA.24-40692.264. Cardenas was arrested on 7-14-22, (ROA.24-40692.264, 533), about three years after April 23, 2019, the day of the drug transfers. The agents interrogated Cardenas for about 59 minutes when he was arrested. ROA.24-40692.264. Before the interrogation, Cardenas was given his *Miranda* warnings. ROA.24-40692.265. He waived his rights and chose to to talk to the agents. ROA.24-40692.265. During his interrogation, Cardenas stated that a female had asked him to pick up the speakers. ROA.24-40692.286.  Det. Campos inquired about Cardenas' fininical status in searching for motive to be involved in the drug business. ROA.24-40692.292. Det. Campos had heard that Cardenas' wife had cancer. ROA.24-40692.294. Cardenas told Det. Campos about the Dollar Generals #1 and #2 and told the agents everything that they already knew and what they had already seen, except that a female asked him to pick up the speakers. ROA.24-40692.286.

Admitted into evidence at the trial of this cause, was redacted Government's Exhibit 13b, which is a transcript of the Cardenas' interrogation that occurred on July 14, 2022. ROA.24-40692.849. The audio record was played to the jury in

redacted form as indicated on the transcript. ROA.24-40692.501-02. This is a summary of the Cardenas' interrogation:

- He waived his *Miranda* rights. ROA.24-40692.850-855.

- He consented to have his phone searched. ROA.24-40692.855-57.

- Agents stated that Cardenas lives at 900 9th Ave. ROA.24-40692.859.

- Cardenas works on lawns. ROA.24-40692.859.

- Cardenas pays for his apartment and for expenses for his sick wife because he gets help from his family in Mexico who send $ 100-200, he has brothers and sisters in California. He pays $ 700 in rent. ROA.24-40692.867.

- Cardenas drives an old Subaru that he bought at an auction. ROA.24-40692.861.

- Cardenas denies that he is doing anything, referring to drug dealing. ROA.24-40692.862.

- Agent Campos told Cardenas that he already knows that Cardenas is involved in drug trafficking. ROA.24-40692.863, 866.

- Cardenas states he is not the owner of the drugs or money. ROA.24-40692.864.

- Cardenas is asked to do favors. ROA.24-40692.864.

- Cardenas is paid $ 500, $ 300 to do this, this, and this. ROA.24-40692.865.

- Agent Campos notices that Cardenas is kind of broke—he does not have money or a car and his wife is sick. ROA.24-40692.865.

- Cardenas was given a warning when he was pulled over April 23, 2000. ROA.24-40692.866, 868.

- When Cardenas was given a warning, he stated to the police that he was coming from "the Dollar," and that he was going to a buddy's house. ROA.24-40692.868.

- Cardenas was driving a white Nissan Sentra. ROA.24-40692.867.

- Cardenas clearly remembered that he was asked to go to "the Dollar" to pick up some speakers. ROA.24-40692.869.

- Cardenas stated that the speakers were for a woman to attach to a car. ROA.24-40692.869.

- Cardenas moved from one Dollar store to another Dollar Store; Cardenas told the person at the Dollar store that "this stuff is heavy, I cannot move from here." ROA.24-40692.869-70.

- Cardenas told the person he was communicating with that he was not moving the car from there; he would wash the car there—he did not want any problems; Cardenas was told to stay where he was at and he would send a guy. A guy showed up and gave Cardenas a truck. Cardenas was told to leave the vehicle at the car wash which is where Cardenas works and Cardenas said no,

he would not move the vehicle because "that thing" was heavy and he did not want to be involved with "that crap." Cardenas told the guy that his family was sick, so the guy told Cardenas to take the truck. ROA.24-40692.869-70-71.

- The speakers were in the back seat. ROA.24-40692.871.

- Cardenas does not know who the white Sentra was registered to. ROA.24-40692.871-72, 874.

- The white Sentra did not belong to Cardenas. ROA.24-40692.872.

- But Cardenas owned another white vehicle that was a Nissan that was exactly the same. ROA.24-40692.872-73-75.

- "They" loaned Cardenas the car. ROA.24-40692.873.

- "They" did not give Cardenas money to buy the car. ROA.24-40692.873.

- The person who gave Cardenas the car was not the owner of it. ROA.24-40692.873.

- The agents' reports or Cardenas do not know who the white Nissan Sentra in question was registered to.  ROA.24-40692.873.

- Cardenas was told to go to a Dollar. ROA.24-40692.875.

- Cardenas was going to be given some speakers, but they were too heavy. ROA.24-40692.875.

- A guy who he called "Compa" or "Compadre" called Cardenas to pick up the speakers. ROA.24-40692.875, 881.

- Cardenas does not remember what vehicle the guy who delivered the speakers to him drove. ROA.24-40692.878.

- The guy who told Cardenas to pick up the speakers was not the guy who met with him. ROA.24-40692.879.

- Cardenas met Compa milking cows in Mexico. ROA.24-40692.880.

- Cardenas has seen Compa about 10 times. ROA.24-40692.882

- Cardenas asked if someone was going to pick up the vehicle with the speakers and the person he was speaking told him to wait, someone will give him the other car. ROA.24-40692.882.

- Cardenas took the other car because he did not want to move the white Sentra. ROA.24-40692.882.

- At the second Dollar, Cardenas called "them" and told them he was going to leave the car there. He didn't know what was in the speakers. ROA.24-40692.882.

- He asked Cardenas to wash the cars and Cardenas was scared, so he went hom. ROA.24-40692.882.

- Cardenas does not know where Compa is and hasn't heard from him on 4-5 years. ROA.24-40692.885-86.

- Compa wanted Cardenas to deliver the speakers to the car wash but Cardenas refused stating that he did not want to take risks or get involved. ROA.24-40692.887.

### 4. **The Sentencing**

#### A. The PSIR (dated 7-2-24). ROA.24-40692.977-89.

##### i. Offense Conduct

The PSR's offense conduct is located at ROA.24-40692.979-82.

##### ii. The Calculations

| | |
|---|---|
| Base Offense Level: | 30 |
| Specific Offense Characteristics: | 0 |
| Victim Related Adjustment | 0 |
| Adjustment for Role in the Offense | 0 |
| Adjustment for Obstruction of Justice | 0 |
| Adjusted Offense Level: | 30 |
| Acceptance of Responsibility | 0 |
| Total Offense Level | 30 |

ROA.24-40692.982-83.

##### iii. Criminal History ROA.24-40692.983-85.

The PSIR scored Cardenas' criminal history as follows:

| 2-9-17 | Driving while intoxicated | 1 |
|---|---|---|

10-20-16    Illegal entry after deportation                    2

ROA.24-40692.984.

### B. Cardenas' Written Objections   ROA.24-40692.973-76.

a. After the Court gave the following instructions, the jury acquitted Cardenas on count two, possession with intent to distribute.

> ...you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant knowingly possessed a controlled substance;
>
> Second: That the substance was in fact cocaine;
>
> Third: That the defendant possessed the controlled substance with intent to distribute it; and
>
> Fourth: That the quantity of the controlled substance was 14.07 kilograms or more of cocaine.

b. It is unconstitutional to deprive a defendant of liberty for acts he was acquitted. Defendant objects to the Court using facts in paragraphs 7, 8, 10, 13, 14, and 15 because he was acquitted of the underlying facts stated within those paragraphs.

c. Base offense of 30 is calculated using facts in which defendant was acquitted.

d. It is unconstitutional to support the conspiracy charge with facts in which defendant was acquitted.

ROA.24-40692.973-76.

### C. Cardenas' Trial Objections and Issue Preservation

a. Jury charge conference: There was no formal jury conference. However, the record indicates that defense counsel submitted a corrected count one charge, which the Court included. ROA.24-40692.633.

b. Defense counsel's oral motion for acquittal: Defense counsel first adopted the arguments made defense counsel for co-defendant Alvarez. ROA.24-40692.624-25. The following arguments were made by co-defense counsel, which were adopted by Cardenas' defense counsel:

> MR. GARZA: ...the Government has not proven their case sufficiently. They have not made a prima facie case. Count 1 requires them to prove that the defendant knowingly and intentionally -- or did knowingly or intentionally conspire and agree with other persons known and unknown.
>
> This goes hand in hand with the second important question that each one of these agents was asked and that was, do they have any evidence of Pedro Alvarez knowing what the substance was in the speaker boxes other than him telling them that he moved the speaker boxes from Point A to Point B, and each one of them answered in the negative that they did not have any other evidence suggesting that he knew what was in there.
>
> I would say that the Government has not made a prima facie case and produced any evidence that there was an agreement, a conspiracy between any people with Pedro Alvarez. And on Count 2 that they have not made a prima facie case and provided any evidence whatsoever that he knew what was in the speaker boxes. As a matter of fact, the agents testified they were sealed. You could not see in them. The only thing they said was that they weighed more. They had to bring a dog in to sniff to detect the present of narcotics. Aside from that, there is no evidence that he knowingly or intentionally possessed the substances.

ROA.24-40692.621-23.

c. Cardenas' defense counsel added:

under the conspiracy charge and under the Fifth Circuit opinions under Apprendi that there is a fourth and fifth element, particularly, the fifth element requires evidence beyond a reasonable doubt that the defendants knew or reasonably should have known two things: the quantity of the drug and the type of drug. And there's no evidence that either defendant knew the quantity of the drug and the type of drug, so –

ROA.24-40692.624-25.

The Court overruled Cardenas' motion for acquittal. ROA.24-40692.627-28.

### D. The Sentencing Hearing

At the sentencing hearing that occurred on 10-23-24, the following objections

were set forth by defense counsel.

MR. CANTU: [i]t is unconstitutional for this Court to consider those paragraphs, specifically Paragraphs 7, 8, 10, 13, 14, and 15 in assessing a punishment for Carlos Cardenas-Ramirez. This case was a two-count indictment.

THE COURT: Right.

MR. CANTU: One was conspiracy, and the second one was actually transporting cocaine. Most importantly, this case only involved one event and one day, the specific day of April 23rd, 2019. It wasn't in the indictment that we're customarily used -- or it's a matter of weeks or months and different acts are done different days. This is just one specific day, April 23rd, 2019. So the Government alleged that the conspiracy occurred on April 23rd, 2019, and the Government alleged that Carlos Cardenas-Ramirez transported the cocaine on April 23rd, 2019. The jury found him not guilty of transporting the cocaine –

THE COURT: Or possession, right.

MR. CANTU: Yeah. They -- of possession with intent to distribute. They found him not guilty of intentionally knowingly possessing the drug on that day.

THE COURT: Right.

MR. CANTU: It is impossible -- it's impossible to find him guilty of the conspiracy if he was not guilty of transporting the cocaine. I'm not arguing today. I'm not arguing today a conflict in verdicts. What I'm arguing today is if we truly believe that we only deprive somebody of their liberty after a jury finds somebody guilty beyond a reasonable doubt, then this man should not be sentenced today for ten years, because the jury found him not guilty of transporting the cocaine. And all of the allegations -- and I understand where you're going, but all the allegations that you're using for the ten years involved him being a transporter of the cocaine.

THE COURT: Right.

MR. CANTU: And did not need to prove –

THE COURT: The weight.

MR. CANTU: -- that he knew it was a certain weight.

THE COURT: Correct.

MR. CANTU: Now that's wrong. When the judge provided us with a jury instruction, I objected to the jury instruction because he was using an old version. The new version requires the Government to prove that he knew, not that it was just a drug, but that he knew that it was cocaine and that he knew it was of a certain weight. So I argued that there was no evidence of that. The Court incorrectly was of the belief that the Government did not have to prove those. But eventually he did put them in the jury charge after I objected to it and showed him the correct jury charge, he put them in the jury charge.

THE COURT: All right. Well, I don't know that that's the law. But under Ares-Mendez (phonetic), I know that the jury needs to find the weight to be at least in excess of five kilos.

MR. CANTU: Yes.

THE COURT: They don't have to know the -- they don't have to find the exact weight. The jury need to find only for sentencing purposes greater than five kilos so they get to the ten-year mandatory minimum.

MR. CANTU: One last thing is initially the U.S. Supreme Court had held that this -- and although I'm not arguing conflict of verdict, I'm arguing a constitutional grounds.

THE COURT: Sure.

MR. CANTU: Right? So I think the Court's ruling has to be that either it's a violation of the Fifth Amendment or it's not a violation of the Fifth Amendment, in your opinion. But I know now that the courts have changed their -- first, they were saying that a jury verdict was not res judicata, but now they're saying that it is. So he's not guilty on the transportation charge –

THE COURT: Right.

MR. CANTU: -- it's res judicata on the conspiracy charge. And since it happened only in one day, it's impossible, Your Honor.

THE COURT: To -- yeah. You think there's an irreconcilable conflict. All right. Well, that'll be something for the appellate courts to decide. I believe that Judge Hinojosa correctly -- or made his conclusions correctly about the charge and the overruling your motion for judgment of acquittal. I didn't see a post-verdict motion filed anywhere, but it sort of seems like that's what you're arguing here today. Nevertheless, I'm going to overrule it. You'll preserve this objection for appellate review. Since it's a mandatory minimum case, really no other issues for me to reach at this point. I do need to let your client speak.

... (Cardenas' colloquy and discussion with Court about safety valve and deportation

are omitted here but can be found at ROA.24-40692.722-23).

MR. LYLES: Yeah. Yes, Your Honor. I just wanted to point out that the standard -- the evidentiary standard for what you take into account for the sentencing is not beyond a reasonable doubt as Counsel said. It's preponderance of the evidence. And at trial, evidence was put on regarding Mr. Cardenas transporting cocaine, that it was cocaine, and that it was in

excess of five kilograms of cocaine. The jury found that it was over five kilograms of cocaine. And that's all you need as far as relevant conduct where sentencing is concerned, and it's a preponderance of evidence.

THE COURT: You have to concede, though, it's hard to make sense of this verdict. When the acts on -- that were put on trial, were in transporting the load to -- I can't remember what store it was. But where's taken the Nissan, he leaves in a Volkswagen. And they found him guilty of the conspiracy but not the possession. But sometimes, like, jurors get confused on technical language and don't understand. And there are lots of reasons why sometimes we get a verdict like this, this sort of mixed bag.

All right. So let me -- I'm going to just sentence him to the mandatory minimum. His -- I've got the presentence report as scored. It comes out to a level 30; he's in a criminal history category of two. And that would've typically left him in a range of 108 to 135 months. But because he has a mandatory minimum the range is 120 to 135 months, I consider those factors under 18 U.S.C. 3553(a) (indiscernible) within the guidelines satisfies him. And therefore Mr. Cardenas is committed to BOP for 120 months.

Upon release from prison, he's placed on supervision for five years, which is also mandatory. And while on supervision, he's not to commit any other federal, state, or local crime. He is to comply with the standard conditions adopted by this Court, abide by any mandatory conditions required by law. In addition, he is not to possess a firearm or other destructive device, to cooperate with providing a DNA sample.

If deported, supervision becomes inactive, but if he were to return to the United States supervision would become -- would reactivate automatically at that time, and he'd be required to report to the nearest U.S. probation office immediately. I find that Mr. Cardenas cannot afford to pay a fine, so I waive it, but he is assessed $100 special assessment payable immediately.

And Mr. Cardenas, you can appeal. You have two weeks to do so. And if you couldn't afford the cost of appeal, you could ask that I waive those costs. All right. Good luck to you, sir. And you're excused at this time.

ROA.24-40692.717-29.

## SUMMARY OF THE ARGUMENT

The evidence adduced at trial was insufficient to support Cardenas' conviction on count one, conspiracy to possess with intent to distribute a controlled substance in an amount of five (5) kilograms or more of cocaine, a schedule ii-controlled substance. The evidence adduced at trial was insufficient to establish that Cardenas knew or reasonably should have known that the scope of the conspiracy involved at least five kilograms of cocaine. The trial court erred in overruling Cardenas' motion for acquittal as to these foregoing issues because insufficient evidence existed to prove them. At sentencing, the district court violated Cardenas' Due Process rights, 14th Amend., U.S. Const. when it considered count two's acquitted facts contained in paragraphs 7, 8, 10, 13, 14, and 15 of the PSIR in assessing a sentence.

## ARGUMENT

**ISSUE 1:** **THE EVIDENCED ADDUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT CARDENAS' CONVICTION ON COUNT ONE, CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE IN AN AMOUNT OF FIVE (5) KILOGRAMS OR MORE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE.**[5]

**ISSUE 2:** **THE TRIAL COURT ERRED IN OVERRULING CARDENAS' MOTION FOR ACQUITTAL GIVEN THAT THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO PROVE CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE IN AN AMOUNT OF FIVE (5) KILOGRAMS OR MORE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE.**[6]

**Standard of Review:** The standard of review for sufficiency of the evidence challenges in conspiracy cases is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[5] This issue was preserved by Cardenas' defense counsel when he adobted all arguments set forth by counsel for co-defendant, Alvarez. ROA.24-40692.625. Alvarez's counsel argued that the Government has not made a prima facie case that requires proof that "defendant knowingly and intentionally conspiraed and agreed with other persons known and unknown." ROA.24-40692.621.

[6] Preserved at ROA.24-40692.621, 625.

*United States v. Mergerson*, 4 F.3d 337(5th Cir. 1993); *United States v. Delgado*, 672 F.3d 320 (5th Cir. 2012). This standard applies to both direct and circumstantial evidence. *Mergerson*, 4 F.3d at 341.

In a conspiracy case, the government must prove beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant knew of the conspiracy, and (3) the defendant intended to join the conspiracy, and actually participated in the conspiracy. *Mergerson*, 4 F.3d at 341.

The evidence is evaluated in the light most favorable to the government, and all reasonable inferences are drawn in support of the jury's verdict. *Mergerson*, 4 F.3d at 341. The appellate court does not reweigh evidence or assess the credibility of witnesses, as these are matters for the jury. *United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006).

This court reviews a denial of a motion for acquittal de novo. *United States v. Fuchs*, 467 F.3d 889, 904 (5th Cir. 2006).

**The Law:** The Government need not prove an overt act to show participation in a conspiracy. *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994). However, the Fifth Circuit has explicitly rejected the "slight evidence" rule in conspiracy cases, emphasizing that the sufficiency of the evidence must meet the substantial evidence standard, which requires proof beyond a reasonable doubt. *United States v. Malatesta*, 590 F.2d 1379 (5th Cir. 1979); *United States v. Turner*,

319 F.3d 716 (5th Cir. 2003). This Court has repeatedly stressed that it "will not lightly infer a defendant's knowledge and acquiescence in a conspiracy." *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir.1983) (*citing United States v. Bright*, 550 F.2d 240, 267 (5th Cir. 1977); *United States v. Johnson*, 439 F.2d 885, 888 (5thCir.), *cert. denied*, 404 U.S. 880 (1971)); *see also United States v. Ross*, 58 F.3d 154,159 (5th Cir. 1995).

Mere presence or association alone, however, are not sufficient to prove participation in a conspiracy. *Jackson*, 700 F.2d at 185; *Ross*, 58 F.3d at 159; *Bermea*, 30 F.3d at 1551 (*citing United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993)). Mere presence in the area where drugs are found is also insufficient to support a finding of possession. *United States v. Ferg*, 504 F.2d 914, 917 (5th Cir. 1974); *United States v. Cordova-Larios*, 907 F.2d 40, 42 (5th Cir. 1990). In fact, the Government "may not prove knowledge and participation in a conspiracy merely by presenting evidence placing the defendant in 'a climate of activity that reeks of something foul.'" *United States v. Robertson*, 110 F.3d 1113, 1119 (5th Cir. 1997) (*quoting United States v. Galvan*, 693 F.2d 417, 419 (5th Cir. 1982)).

In some cases, control of a vehicle can be sufficient to infer knowledge of the presence of drugs, (*United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008)) only where the drugs 'are clearly visible or readily accessible.' *United States v.*

*Pennington*, 20 F.3d 593, 598 (5th Cir. 1994) (*quoting United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988)).

Where drugs are concealed in some way, the Fifth Circuit: "requires that in addition to mere presence in the vehicle, or control over it, there be circumstances evidencing a consciousness of guilt on the part of the defendant." *United States v. Gonzalez-Lira*, 936 F.2d 184, 192 (5th Cir. 1991); *United States v. Rojas Alvarez*, 451 F.3d 320, 334 (5th Cir. 2006) (holding that when contraband is secreted in a hidden compartment, additional evidence is required to prove the knowing element, such as a consciousness of guilt, conflicting statements, or an implausible account of events); *United States v. Vara*, 476 Fed. Appx. 554, 555 (5th Cir. 2012) (holding that when drugs are concealed, circumstances evidencing a consciousness of guilt include but are not limited to nervousness, conflicting statements to law enforcement officials, and an implausible story.); *United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir. 2005) (per curiam (same); *United States v. Martinez-Lugo*, 411 F.3d 597 (5th Cir. 2005) (holding that lying to law enforcement, fabricating documents, or nervousness is sufficient circumstantial evidence of knowledge of the presence of drugs); *United States v. Garcia*, 86 F.3d 394 (5th Cir. 1994) (finding sufficiency of the evidence of participation in a conspiracy where the defendant engaged in a car swap involving a drug-laden vehicle, observed changes in the vehicle's condition such riding lower, and attempted to destroy evidence when stopped by police). This

additional evidence is required because it is a fair assumption that a third party might have concealed the controlled substance in the hidden compartment with the intent to use the unwitting defendant as the carrier in a smuggling enterprise. *United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990). "No single piece of circumstantial evidence need be conclusive when considered in isolation;" instead, a reviewing court must ask "whether the evidence, when considered as a whole," is sufficient to permit a rational jury to make a finding of knowledge beyond a reasonable doubt. *United States v. Vara*, 476 Fed. Appx. 554, 558 (5th Cir. 2012) (*citing United States v. Miller*, 146 F.3d 274, 281 (5th Cir. 1998)). *See also United States v. Pineda-Ortuno*, 952 F.2d 98 (Fifth Cr. 1992) and *United States v. Garza*, 990 F.2d 171 (5th Cir. 1993) that hold consistent with the foregoing cited cases.

**Application:** Cardenas hereby incorporates all facts set forth in the statement of facts above and are incorporated herein for all intents and purposes. The focus here are Cardenas' overt actions and whether they constitute circumstances evidencing a consciousness of guilt on the part of the defendant. These focuses facts include but are not limited to:

The incidents in question occurred on April 23, 2000. ROA.24-40692.211. Herrera became the focus of a long-term investigation, who was a cell leader who utilized speaker boxes to transport narcotics and who was in custody at the time of the trial of this cause. ROA.24-40692.489, 490. No evidence was presented at trial

indicating that Cardenas was part of that long-term investigation. While agents were conducting surveillance on Herrera, Herrera drove a red Jetta, to Dollar General #1, (ROA.24-40692.211), at which time a white Sentra driven by Cardenas arrived parking next to Herrera's vehicle.  ROA.24-40692.367-68. Cardenas was not the owner of the Sentra and does not know who it belongs to. ROA.24-40692.872, 874. The agents do not know who the white Sentra was registered to. ROA.24-40692.930. The person who gave Cardenas the car was not the owner of it. ROA.24-40692.873. Cardenas was asked by a female to go to Dollar General #1 to pick up some speakers. ROA.24-40692.286, 869. No evidence exists that Cardenas was told that drugs were inside the speakers. ROA.24-40692.869.

While at Dollar General #1, Herrera got off his vehicle at the same time that Cardenas got out of the white Sentra. ROA.24-40692.368. Herrera opened his back door of the Jetta on the driver's side and then opened up the back door to the white Sentra on the passenger side. ROA.24-40692.368. Cardenas walked around his vehicle towards the trunk rear area. ROA.24-40692.368. Herrera reached into his back seat and bent over to grab an item and placed it into the back seat of the Sentra. ROA.24-40692.368. He did this twice.  ROA.24-40692.368. Herrera's body motion was as though he was picking up something with weight to it. ROA.24-40692.369.

Agents stopped surveillance on the red Jetta and established surveillance on the white Sentra. ROA.24-40692.214. The agents followed the white Sentra to Dollar General #2, about 2.5 miles north of Dollar General #1. ROA.24-40692.231.

While at Dollar General #2, Cardenas reached into the white Sentra and it seemed that he was adjusting something in the back, he then closed the door and proceeded inside the Dollar General. ROA.24-40692.370.[7] While at Dollar General #2, Cardenas pulled the speaker boxes through the middle of the seat and felt that they were heavy. ROA.24-40692.870, 876. Cardenas then informed the person he was speaking to that he was not going to move the car any further and threatened to leave walking. ROA.24-40692.879. Cardenas made clear to the person he was speaking to that he did not want any problems; his wife was sick with cancer. ROA.24-40692.883-84. While at Dollar General #2, a silver SUV arrived driven by Geronimo Gonzalez, and parked. ROA.24-40692.398. Cardenas asked Geronimo Gonzalez to buy him a soda inside the store as he had been there "all day." ROA.24-

---

[7] The trial testimony that Cardenas was messing with something in the back seat occurred at Dollar General #2. ROA.24-40692.370. In his interrogation played to the jury in redacted form, (ROA.24-40692.849-903), he stated that he moved the speaker boxes from Dollar General #1. Whether Cardenas moved the boxes at Dollar General #1 or Dollar General #2 does not alter any argument set forth in this issue. ROA.24-40692.876-77, 879, 883, 896-900. Even though he drove to Dollar General #2 after pulling the sealed and non-transparent boxes in the back seat, he still did not know, nor was it reasonably foreseeable for him to know that the speaker boxes contained cocaine and that the quantity was 5 kilograms or more as alleged in the indictment. ROA.24-40692.49-50. This is more fully discussed in Issue 3 and 4 below.

40692.884. Cardenas was at the Dollar General #2 for about 30-40 minutes. ROA.24-40692.254.

Upon leaving the store at Dollar General #2, Cardenas and Geronimo Gonzalez switched vehicles, with Cardenas driving off in the white SUV and Geronimo Gonzalez driving off in the white Nissan Sentra. ROA.24-40692.215. Soon after Cardenas left Dollar General #2, he was stopped by the Constable for a "traffic stop." ROA.24-40692.493. During this traffic stop, Cardenas gave the Constable an ID from Mexico that had the name of "Sergio Anaya." ROA.24-40692.493-94, 574. The Constable issued Cardenas a warning for disregarding a stop. ROA.24-40692.572.

Meanwhile, Geronimo Gonzalez drove the white Sentra to the Alvarez residence, which is about one-mile away from Dollar General #2. The facts surrounding what happened at the Alvarez residence and thereafter did not involve Cardenas. These facts are fully set out in the Statement of Facts above and will not be repeated herein.

The speakers were sealed and tools had to be used to pry them open while at the McAllen DEA District Office. ROA.24-40692.378, 390. Prior to opening, the agents could not see inside the speaker boxes. ROA.24-40692.383.

A little over three years of the events in question, (April 19, 2019), Cardenas was arrested on July 14, 2022 at his apartment. ROA.24-40692.534. Cardenas was

taken into an interrogation, at which time, he waived his rights. ROA.24-40692.538.
A summary of Cardenas' interrogation, which was played to the jury in redacted
form and a transcript of which was given to the jury, (ROA.24-40692.501-02, 848-
903), is included in the Statement of Facts which is incorporated herein for all intents
and purposes.

Cardenas consented to a search of his apartment and phone. ROA.24-
40692.360. No drugs, ledgers, or large amounts of money were found at Cardenas'
apartment. ROA.24-40692.535.

What Cardenas stated in the interrogation matched what the agents knew
through their investigation. ROA.24-40692.286, 539-40. During the interrogation,
Cardenas asked Detective Campos why he did not arrest Cardenas "back then," and
Detective Campos' response was: "because I didn't want to." ROA.24-40692.288-
89.

Cardenas was arrested and interrogated on July 14, 2022, over three years
after the incidents on April 23, 2019. ROA.24-40692.264, 533. Even with the
passage of time of three years, Cardenas gave no conflicting statements, implausible
stories, and did not display signs of nervousness which are evidence of guilt. *Vara*,
476 Fed. Appx. 554, 555. Cardenas thought that the speakers were for a woman to
install in her car for music. ROA.24-40692.889. Cardenas engaged in a "car swap"
only after he was at Dollar General #2, had reached into the back seat to move the

speaker boxes, and felt that they were heavy and refused to drive the vehicle any further. ROA.24-40692.370-71. Cardenas then decided that he did not want to move the vehicle any further from Dollar General #2 after he felt the heaviness of the speaker boxes. ROA.24-40692.896. There was no evidence that Cardenas saw or knew what the sealed speaker boxes contained. The speaker boxes obtained from the Alvarez residence were taken to the McAllen District Office where a crowbar and hammer were used to take the speakers apart. ROA.24-40692.392. No evidence exists that the white Nissan Sentra rode lower because of the weight of the speaker boxes that were placed in his vehicle by Herrera at Dollar General #1. ROA.24-40692.368.

The "overt act" committed by Cardenas of receiving from Herrera the sealed speaker boxes at Dollar General #1 and driving them to Dollar General #2 constitutes only slight evidence and does not pass substantial evidence muster. United States. v. Malatesta, 590 F.2d 1379, 1382 (5th Cir. 1979); United States v. Turner, 319 F.3d 716, 720-21 (5th Cir. 2003). At Dollar General #2, when Cardenas pulled the speakers to the center of the back seat, he felt they were "heavy." and he called the person he was communicating with to tell him that he was not moving from there because he did not want any problems. ROA.24-40692.869-71. This establishes a lack of intent on his part to participate in a drug conspiracy.

This Court cannot lightly infer Cardenas' knowledge and acquiescence in a conspiracy, (*Jackson*, 700 F.2d at 185; *Johnson*, 439 F.2d at 888; *Ross*, 58 F.3d at 159), particularly when the narcotics were secreted inside the sealed speaker boxes that were not transparent. ROA.24-40692.378, 383, 390. His overt actions are therefore, not sufficient to prove participation in a conspiracy. *Bermea*, 30 F.3d at 1551; *Cardenas*, 9 F.3d at 1157. Thus, given that the drugs in the case at hand were hidden in sealed, non-transparent speaker boxes, this Court requires additional circumstantial evidence to establish the defendant's knowing and voluntary involvement in the conspiracy *Gonzalez-Lira*, 936 F.2d at 192; *Rojas Alvarez*, 451 F.3d at 334. Cardenas was not the owner of the white Nissan Sentra and the agents did not know who the vehicle was registered to. ROA.24-40692.873-74. The drugs were in the speaker boxes and the boxes were sealed and the agents could not see inside of them. ROA.24-40692.383. The agents' focus of what Agent Rosales referred to as a "long-term" investigation was Cesar Herrera who was considered a cell leader and who used various types of containers to bring in liquid methamphetamine into the United States, (ROA.24-40692.489-90) did not involve Cardenas in those dealings. Cesar Herrera, not Cardenas, transferred the speakers to the white Nissan Sentra. ROA.24-40692.441. At Dollar General #2, after Cardenas had driven from Dollar General #1 where he did not touch the speaker boxes or transfer them to his car, Cardenas moved the sealed and non-transparent speaker

boxes to the side of the back seat and they seemed like they had some weight in them. ROA.24-40692.370, 935. From that moment on, Cardenas refused to move the vehicle. The person with whom Cardenas was speaking wanted Cardenas to take the speaker boxes to a car wash, (ROA.24-40692.937), but Cardenas refused and stayed at Dollar General #2. ROA.24-40692.214. While at Dollar General #2, Cardenas stated to the person he was talking to that he was going to leave walking if someone did not go to Dollar General #2 to retrieve the white Nissan Sentra. ROA.24-40692.935. A swap of the vehicles occrred at Dollar General #2. ROA.24-40692.215.

The foregoing evidence clearly shows that Cardenas was merely present at the Dollar Generals where the drugs were hidden and contained in sealed, non-transparent speaker boxes at the time. Nothing more than mere presence by Cardenas is shown by the evidence established in this case. *United States v. Martinez-Moncivais*, 14 F.3d 1030, 1034 (1994). During his interrogation, which occurred three years after the incident in question, no evidence exists that Cardenas seemed nervous, or that he gave inconsistent statements or lied to the police, or that he gave implausible statements to the police. It follows that after viewing the foregoing relevant evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the conspiracy beyond a reasonable doubt. *Mergerson*, 4 F.3d at 341. That is, in this conspiracy case, viewing all of the

evidence in the light most favorable to the Government, it failed to prove beyond a reasonable doubt that (1) a conspiracy existed, (2) Cardenas knew of the conspiracy, and (3) Cardenas intended to join the conspiracy, and actually participated in the conspiracy. *Mergerson*, 4 F.3d at 341.

Therefore, Cardenas prays as to Count 1, that this Court set aside the verdict, reverse the judgment, and enter an order of acquittal.

**ISSUE 3: THE EVIDENCED ADDUCED AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT CARDENAS KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE SCOPE OF THE CONSPIRACY INVOLVED AT LEAST 5 KILOGRAMS OF COCAINE.[8]**

**ISSUE 4: THE TRIAL COURT ERRED IN OVERRULING CARDENAS' MOTION FOR ACQUITTAL AS TO THE FOURTH AND FIFTH ELEMENTS OF CONSPIRACY THAT THE JURY CHARGE SET FORTH IN THE JURY CHARGE WHEN THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT CARDENAS KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE SCOPE OF THE CONSPIRACY INVOLVED AT LEAST 5 KILOGRAMS OF COCAINE.[9]**

**Standard of Review:** This court reviews a denial of a motion for acquittal de novo. *United States v. Fuchs*, 467 F.3d 889, 904 (5th Cir. 2006). This Court must determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See United States v. Lopez-Moreno*, 420 F.3d 420, 437-38 (5th Cir. 2005). Because Cardenas moved for judgment of acquittal at the close of the case (ROA.24-40692.624-25), his appellate claim regarding the

---

[8] Preserved by Cardenas at ROA.24-40692.624-25.

[9] Preserved by Cardenas at ROA.24-40692.624-25. The pertinent jury charge instruction is found at ROA.24-40692.73-96.

sufficiency of the evidence as to the quantity of cocaine attributable to him was preserved for appellate review. *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000). Cardenas also incorporates by reference the standard of review discussed in issues 1 and 2 above.

**The Law:** To sustain the conviction for conspiracy, the Government had the burden of proving both (a) the elements of a conspiracy to distribute a controlled substance, (*see United States v. Olguin*, 643 F.3d 384, 394 (5th Cir. 2011)) and (b) the quantity of drugs with which Cardenas was directly involved or that was reasonably foreseeable to him, *see United States v. Haines*, 803 F.3d 713, 740 (5th Cir. 2015).

Drug quantity requiring a mandatory minimum must be proven beyond a reasonable doubt. *United States v. Gonzalez*, 907 F.3d 869, 875 (5th Cir. 2018). The defendant's responsibility is limited to the amount with which he was directly involved or that was reasonably foreseeable to him. *United States v. Haines*, 803 F.3d 713, 740 (5th Cir. 2015). The jury is allowed to infer knowledge based on the quantity of drugs involved, "as long as other evidence supports the inference." *United States v. Moreno-Gonzalez*, 662 F.3d 369 (5th Cir. 2011) (*citing United. States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001)). "The government need not seize the actual amount charged to meet its burden," and "[t]he jury can find a drug quantity by extrapolating from the testimony." *United States v. Walker*, 750 F.

App'x 324, 326 (5th Cir. 2018) (unpublished). The reviewing court must therefore weigh other evidence supporting this inference; once other evidence was presented which supports this inference, it is possible for the jury to conclude that the quantity of drugs was overwhelming enough to dispel any reasonable doubt. *United States v. Moreno-Gonzalez*, 662 F.3d 369, 373 (5th Cir. 2011).

**Application:** The Government failed to prove beyond a reasonable doubt the specific drug quantity attributable to Cardenas. From the moment that Cardenas received possession of the sealed, non-transparent speaker boxes at Dollar General #1 to the time that he arrived at Dollar General #2, which is about 2 ½ miles apart, Cardenas moved the speaker boxes in the back seat and felt that they were heavy. ROA.24-40692.876-77, 879, 883, 896-900. The agents saw Herrera transfer the speaker boxes at Dollar General #1 from his vehicle to the white Nissan Sentra that Cardenas was driving and saw from Herrera's body motion that he was picking up something with weight to it. ROA.24-40692.369.

The term, "heavy," is subjective. What may seem heavy to one person may not be heavy to another. The actual weight of the drugs was established through the testimony of Brigid Mahula King who was employed with the South Central Laboratory DEA in Dallas, Texas and has worked there for 24 years. ROA.24-40692.451. King testified that the net weight of the narcotics was 14.07 kilograms. ROA.24-40692.465-66. However, that weight was not known by Cardenas or the

agents at the time of the events in question. Evidence that the speaker boxes were heavy or appeared to be heavy is speculative, unreliable, and lacked sufficient indicia of reliability to support the jury's verdict. Said evidence cannot serve as a basis of proof beyond a reasonable doubt, either through extrapolation or inference, that required a mandatory minimum sentence. *United States v. Gonzalez*, 907 F.3d 869, 875 (5th Cir. 2018).

In *United States v. Daniels*, 723 F.3d 562 (2013), this Court we held that "where a defendant may be subject to enhanced statutory penalties because of drug quantity or type, the requisite fourth 'element' under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is not a formal element of the conspiracy offense." Accordingly, "the Government's failure to prove the drug quantity does not undermine the conviction. Rather, it only affects the sentence." *Id.* at 572. Under *Daniels*, if the government successfully proves a drug conspiracy conviction but fails to prove the drug quantity, that does not undermine the drug conspiracy conviction as a whole. It simply affects the sentence that can be imposed, meaning that a defendant in such a case cannot be subject to a statutorily enhanced punishment based on the quantity of drugs involved in the conspiracy. *United States v. Aguirre-Rivera*, 8 F.4th 405, 410-411 (5th Cir. 2021).

Here, given that the Government failed to prove beyond a reasonable doubt, the weight of the narcotics to be five kilograms or more as required in the indictment,

(ROA.24-40692.49), this Court's remedy is to remand this case for a new sentence without the statutorily enhanced punishment based on the quantity of drugs involved. *Daniels*, 723 F.3d at 572; *Aguirre-Rivera*, 8 F.4th at 410-411.

Therefore, Cardenas prays that this Court set aside the jury verdict, reverse the judgment, and remand this case to the trial court for a new sentence without the mandatory minimum enhancement.

**ISSUE 5: AT SENTENCING, THE DISTRICT COURT VIOLATED CARDENAS' DUE PROCESS RIGHTS, 14TH AMEND., U.S. CONST. WHEN IT CONSIDERED COUNT TWO'S ACQUITTED CONDUCT.[10]**

The use of acquitted conduct in sentencing raises significant constitutional concerns under the 14th Amendment's Due Process Clause, particularly when viewed in light of the precedent set by *In Re Winship*, 397 U.S. 358 (1970). The Supreme Court in *Winship* established that the Due Process Clause requires proof beyond a reasonable doubt for every fact necessary to constitute the crime charged. This principle has been extended in subsequent cases to emphasize the importance of jury determinations in criminal proceedings, as seen in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact increasing a defendant's sentence beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *United States v. Pineda-Arrellano*, 492 F.3d 624 (5th Cir. 2007); *United States v. Affleck*, 861 F.2d 97 (5th Cir. 1983); *Garland v. Maggio*, 717 F.2d 199 (5th Cir. 1983).

In the 5th Circuit jurisdiction, federal trial judges have broad discretion in sentencing, as long as the sentence is within the statutory range and does not violate the law. However, the use of acquitted conduct in sentencing has been a contentious issue. While courts have traditionally allowed sentencing judges to consider a wide

---

[10] This issue was preserved by Cardenas' trial counsel at ROA.24-40692.973-76.

range of information, including conduct for which a defendant was acquitted, this practice has been criticized for undermining the jury's role and the "beyond a reasonable doubt" standard required for criminal convictions. For example, in *United States v. Affleck*, 861 F.2d 97 (5th Cir. 1988), the court noted that sentencing traditionally operates without constitutionally imposed burdens of proof, but it also acknowledged the due process requirement for proof beyond a reasonable doubt for facts necessary to constitute a crime. *See also United States v. Denson*, 588 F.2d 1112 (5th Cir. 1979).

The Sentencing Guidelines contain analogous provisions that provide some guidance on this issue. Under § 1B1.3. Relevant Conduct (Factors that Determine the Guideline Range), acquitted conduct is generally excluded from relevant conduct for sentencing purposes unless it establishes, in whole or in part, the offense of conviction. This reflects a recognition of the tension between judicial discretion in sentencing and the constitutional protections afforded to defendants.

In the instant case, Cardenas' attorney's objections at the sentencing hearing are set forth in the above statement of the case and are incorporated herein for all intents and purposes. ROA.24-40692.973-76; ROA.24-40692.715-27.

The district court rejected defense counsel's argument that usage of acquitted conduct in assessing a sentence violates the 14th Amend., U.S. Const. ROA.24-40692.721.

As defense counsel set forth in his argument to the district court, there was one transaction at issue, which occurred on April 23, 2019. When the jury acquitted on count two's possession charge, it found him not guilty of the same facts that form the basis for count one. Specifically, the PSIR writer utilized the acquitted facts in paragraphs 7, 8, 10, 13, 14, and 15 of the PSIR to sentence Cardenas on count one.

The district court acknowledged the oddity of the verdict results when it said:

> THE COURT: You have to concede, though, it's hard to make sense of this verdict. When the acts on -- that were put on trial, were in transporting the load to -- I can't remember what store it was. But where's [sic] taken the Nissan, he leaves in a Volkswagen. And they found him guilty of the conspiracy but not the possession. But sometimes, like, jurors get confused on technical language and don't understand. And there are lots of reasons why sometimes we get a verdict like this, this sort of mixed bag.

ROA.24-40692.724.

The 14th Amend., U.S. Const. prohibits the district court's use of acquitted conduct in assessing a sentence, as it violates the "beyond a reasonable doubt" standard and the jury's role in determining guilt. While sentencing judges have discretion, the exclusion of acquitted conduct under the Sentencing Guidelines and the broader concerns about fairness and legitimacy provide additional support for challenging this practice. *Pineda-Arrellano*, 492 F.3d at 628-29; *In Re Winship*, *supra*.

Therefore, Cardenas prays that this Court set aside the verdict, reverse the judgment, and remand the case to the trial court with instructions to disregard Count 2's acquitted conduct in the new sentence assessment.

## **CONCLUSION AND PRAYER**

For the foregoing reasons, Cardenas prays that this Court vacate Count 1's verdict, reverse the judgment of the District Court and enter an order of acquittal. Alternatively, Cardenas prays that this Court remand this case to the District Court for a new sentence without the mandatory minimum enhancement.

Respectfully submitted,

*/s/ Victoria Guerra*
3219 N. McColl Rd.
McAllen, Texas 78501
(956) 618-2609
(956) 618-2553 (fax)
State Bar Number: 08578900
Cardenas' Appellate Attorney

## <u>CERTIFICATE OF SERVICE</u>

I, Victoria Guerra, hereby certify that on the 28th day of May 2024, an electronic copy of Appellant's Brief and Record Excerpts was served by notice of electronic filing via this court's ecf system upon opposing appellate counsel:

Carmen Mitchell
U.S. Attorney's Office, Southern District of Texas, Appellate Division
Suite 2300
1000 Louisiana Street
Houston, TX 77002-0000
Via ECF email: carmen.mitchell@usdoj.gov
and to USATXS.APPELLATE@usdoj.gov

Upon notification that the electronically-filed brief and Record Excerpts have been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief and four paper copies of the Record Excerpts will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5TH CIR. R. 25.2.1, 31.1; 5th Cir. ecf filing standard E(1).

                    */s/ Victoria Guerra*
                    Victoria Guerra
                    Attorney for Cardenas

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains approximately 7,950 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R.APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Time New Roman, 14 point font for text and 12 point font for footnotes.

3. This brief complies with the privacy redaction requirement of 5TH CIR. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4.   This brief complies with the electronic submission of 5TH CIR. R. 25.2.1, because this is brief is an exact copy of the paper document.

5.    This brief is free of viruses because this brief has been scanned for viruses with the most recent version of Microsoft Security Essentials scanning program.

*/s/ Victoria Guerra*
Victoria Guerra,
Appellant's Attorney
March 19, 2024